# EXHIBIT G

```
 1   STATE OF WISCONSIN: CIRCUIT COURT: MILWAUKEE COUNTY
                       BRANCH 25
 2   ---------------|--------------------------------

 3   STATE OF WISCONSIN,

 4                   Plaintiff,

 5               -vs-                  Case No. 13-CF-617

 6   EDDIE GILL,

 7                   Defendant.
     -------------------------------------------------
 8

 9   February 25, 2014

10   BEFORE THE HONORABLE
     STEPHANIE ROTHSTEIN
11

12              MOTION TO SUPPRESS STATEMENTS
13                   COURT'S DECISION
14

15                     APPEARANCES
16

17       ANTONI APOLLO, Assistant District Attorney,
18   appeared on behalf of the State.
19       JOHN BIRDSALL, Attorney-at-Law, appeared on
20   behalf of the Defendant.
21

22              Defendant Present In Court
23

24                  STEPHANIE SHOATE
25            OFFICIAL COURT REPORTER
                          1
```

**P R O C E E D I N G S**

2            (Whereupon, the following

3    proceedings began at 10:08 o'clock in the

4    forenoon.)

5            THE CLERK:  State of Wisconsin

6    versus Eddie Gill.  13-CF-617.  Appearances,

7    please.

8            MR. APOLLO:  Antoni Apollo

9    appears for the state.

10           MR. BIRDSALL:  Mr. Gill in

11   person, in custody with Attorney John

12   Birdsall.  Good morning.

13           THE COURT:  All right.  Good

14   morning.  We're here this morning for a

15   decision on the Motion to Suppress that's been

16   filed by the defense in this case.

17           At first blush Mr. Birdsall

18   initially filed a motion at the end of

19   December requesting an evidentiary hearing and

20   sought to suppress specifically the statement

21   that was made by Mr. Gill in the morning

22   commencing at approximately 7 a.m. on February

23   14th, 2013.  Upon the Court's inquiry,

24   Mr. Birdsall supplemented his motion to

25   include a challenge to the admissibility of

2

```
 1    interrogations of which took place both before

 2    and after that.  It's important to review the

 3    facts here in terms of the timing, and the

 4    Court finds that this is the time line here

 5    based upon all of the submissions, the

 6    transcripts, and the testimony in this case

 7    and I've reviewed everything.

 8              Correctly stated by Mr. Birdsall

 9    in his supplement filed February 10th, 2013,

10    to this motion, Mr. Gill appeared at the

11    Police Administration Building at the City of

12    Milwaukee Police Department in the evening

13    hours of February 12th, 2013, primarily, it

14    appears, as a witness between 7:30 and 8 p.m.

15    He was interrogated by Detectives Graham and

16    Gulbrandson who determined at a particular

17    point in their interrogation that because of

18    inconsistencies, and I find that there were in

19    fact inconsistencies between Mr. Gill's

20    recounting of events and their investigation,

21    a determination was made to place Mr. Gill

22    under arrest for obstructing.  That decision

23    has not been challenged here.  And even if

24    there had been a motion filed challenging the

25    propriety of that arrest, the Court would
```

3

1    uphold it and find that it was appropriate --

2    an appropriate exercise of their authority

3    under the circumstances.

4              Subsequent to Mr. Gill being

5    placed under arrest, the recording equipment

6    was turned on and the remainder of the

7    interaction between these two detectives and

8    Mr. Gill was memorialized on video and audio

9    recording and a transcript has been provided

10    to the Court.  The parties have stipulated

11    that all of the transcripts that have been

12    submitted are accurate written records of the

13    contents of those DVDs.

14              That interview ended.  And then

15    on the 13th at approximately seven or 7:30 in

16    the morning, Detective Hensley reinterviewed

17    the defendant and administered a polygraph

18    examination.  Later on on the 13th of

19    February, 2013, Detectives Peterson and Ball

20    interviewed Mr. Gill, interrogated Mr. Gill

21    because there's no doubt that Detective

22    Hensley's contact on the 14th with Mr. Gill

23    was an interrogation and there's no doubt that

24    Detectives Graham -- or I'm sorry --

25    Detectives Peterson and Ball interrogated the

4

1   defendant.  And then later on on the same day,

2   Detective Hensley -- I'm sorry.  The next day

3   Detective Hensley returned on February 14th in

4   the morning for yet another interrogation.

5   That is the time line here.  So four separate

6   interactions, February 12th, February 13th in

7   the morning, February 13th in the afternoon or

8   evening, and February 14th in the morning.

9            It's important that we also

10  review Mr. Gill's personal characteristics.

11  Mr. Gill's personal characteristics are the

12  following and I find these to be a matter of

13  record.  Although they were only addressed

14  briefly at the end of our hearing yesterday

15  and upon the Court's inquiry, Mr. Gill has

16  been found twice previously in court

17  proceedings to be incompetent, and efforts

18  were made to restore him or to remediate him

19  by counseling so that he could attain

20  competency.  Those efforts failed on two

21  occasions prior to February 2013.

22            Mr. Gill, after he was charged

23  with this offense, was interviewed, a

24  challenge was interposed to his competence,

25  and he was referred for a doctor's evaluation

5

1    and was determined initially by the
2    interviewer to be not competent but likely to
3    attain competence.  And my review of the
4    records indicates that that determination was
5    made a mere 12 days after based upon an
6    interview with the doctor on February 26th.

7            Mr. Gill is an individual who was
8    prescribed medication for diagnosed mental
9    health problems, who was not taking his
10   medication.  The record supports that.  The
11   exhibits that have been filed by the defense
12   supports that.  Mr. Gill's mother testified
13   that she attempted to advise Detective
14   Peterson that Mr. Gill was slow and had, my
15   word, "cognitive" issues.  She didn't use that
16   word but that's what we can infer from her
17   testimony.  The detective denies -- denied
18   that conversation.  However, the Court found
19   Ms. DeBerry's testimony to be credible in that
20   regard.

21           So we have a young man who has
22   been found not competent twice before, who's
23   functionally illiterate, who is not competent
24   according to the medical professional 12 days
25   after he was interrogated, whose mother

6

```
 1       advised the detective that he had these
 2       cognitive issues, and he's in custody under --
 3       who for anyone under normal circumstances
 4       would be a stressful set of circumstances.
 5       Those are the facts that the Court finds them
 6       up to commencing the interrogations.
 7               I will say further as background,
 8       I've reviewed all of the reports that are
 9       contained in the court file surrounding the
10       determination of competence at the very -- or
11       lack of competence at the very beginning of
12       this case and the reports from Mendota and the
13       final report and decision of Judge Brostrom.
14       I've also reviewed the reports that have been
15       submitted by the two defense experts in this
16       case.  I've reviewed the transcripts.  And
17       it's clear that -- and portions of the
18       recorded interviews.  It's clear that the
19       defendant in his statements was all over the
20       board.  I was here.  I was there.  I didn't do
21       this.  I did it.  There are all sorts of -- I
22       call them almost "frantic statements" trying
23       to exculpate himself.  At one point he's on
24       the -- in the interview room alone on February
25       12th talking to himself at length, pages and
```

Case 2:15-cv-00587-RTR   Filed 09/14/15   Page 8 of 22   Document 19-7

1    pages protesting his innocence.  So I want to

2    then review the standards in what the law

3    requires here.

4              Now, we all know that it's the

5    state's burden.  The proponent of the evidence

6    has a burden of proving by preponderance of

7    the evidence.  They have to establish that the

8    defendant's rights were not violated by the

9    challenged behavior by law enforcement.  In

10   other words, the exclusionary rule really is

11   reserved for use and application as an

12   extraordinary remedy.  We recognize that it --

13   and I'm quoting from State vs. Herr, H-e-r-r,

14   at 346 Wis. 2d 603.  And this Court recognizes

15   that -- the exclusionary rule in Fourth

16   Amendment context but I also support this as a

17   policy statement about Fifth and Sixth

18   Amendment situations, that the Court

19   recognizes that this does "exacts substantial

20   social costs, including potentially releasing

21   guilty and dangerous criminals into

22   communities and impairing the truth-seeking

23   objectives of our legal system."

24              So the Court is mindful of the

25   implications beyond the immediate proceedings,

8

1      the effects of its rulings in any case

2      involving the suppression of evidence.  I'm

3      also guided by state dicta in an unpublished

4      case from this county, State vs. Cole, that

5      discusses the burden of proof at a suppression

6      hearing and talks about what the requirements

7      are in terms of advisal of rights and the next

8      step that law enforcement is obliged to take

9      if the defendant invokes his right to

10     counsel.

11                 We recognize that if a defendant

12     invokes his right to silence, the officers are

13     entitled to reinitiate questioning, discuss a

14     little further with him the circumstances that

15     lead him to want to remain silent after an

16     appropriate period of time has passed.  But if

17     a defendant asserts his Sixth Amendment right

18     to counsel, the case law is clear that that

19     assertion has to be scrupulously honored.  And

20     I am also relying on Maryland vs. Shatzer,

21     S-h-a-t-z-e-r, at 130 Supreme Court 1213,

22     which is a 2010 proceedings or case.

23                 Various Wisconsin cases have

24     taken up Maryland vs. Shatzer, have endorsed

25     it, adopted it, and recognize that there are

9

1    certain circumstances when someone asserts
2    their right to counsel.  It's appropriate to
3    have subsequent contact with law enforcement.
4    Those are situations where someone's asserted
5    their right to counsel and they're released
6    from custody and the police then seeks to
7    reinitiate conversations or counsel's been
8    made available or a clear-cut case where
9    finally a defendant or an accused, a suspect
10    who's in custody reinitiates his contact with
11    law enforcement.
12            So those are the circumstances
13    under which we can -- law enforcement can
14    proceed after there's been an effective
15    assertion of a suspect's right to counsel.
16            There are some very strict rules
17    and some very bright line rules that apply
18    when someone has asserted their right to
19    counsel.  And the Court -- this Court has
20    considered these circumstances very carefully
21    and the effects of the Court's ruling in this
22    case very carefully.  Not only do we have a
23    bright line rule about assertion of right to
24    counsel and what law enforcement's response
25    should be, in this case we have a defendant

1    who undeniably has limitations that put him
2    outside the mainstream of our general
3    population in terms of his intellect and his
4    mental health.
5              Mr. Birdsall has done quite a
6    good job of providing the Court with a lot of
7    background information in terms of the
8    exhibits and information about the defendant
9    personally by way of the experts' opinions.
10   But frankly, this Court is most swayed by the
11   information that it learned late in the day
12   yesterday.  And really that was emphasized
13   mostly after the Court inquired about it.
14   That being the history of the defendant with
15   law enforcement.
16             And while Mr. Gill is certainly
17   someone who has a lot of experience with the
18   police and while he's someone whose certainly
19   been in and out of facilities, detention, jail
20   for various offenses and criminal conduct, the
21   Court cannot ignore his personal
22   circumstances, his personal characteristics
23   that affect his ability to fully comprehend
24   the consequences of his actions in a legal
25   sense.  And that is all the Court has to

11

```
 1      consider today.  Not guilt or innocence.

 2      These decisions have to be made putting aside

 3      considerations of guilt or innocence of the

 4      charged offense.  Because as Mr. Gill sits

 5      here today, this Court must presume that he is

 6      innocent of this offense as it has not yet

 7      been proven.

 8                 So putting that aside, the

 9      question then has to be whether or not, given

10      this defendant's circumstance and all the

11      circumstances that I set forth for the record,

12      a couple of things.  First, did he make a

13      knowing and intelligent waiver of his rights?

14      The Court determines that the state has proven

15      that by the preponderance of the evidence

16      here, Mr. Gill, based on his previous

17      experience with law enforcement, based upon

18      the conversations that he had with the

19      detectives, that he did make a knowing and

20      intelligent waiver of his rights.  He clearly

21      was in custody.  He clearly was subject to

22      questioning designed to elicit incriminating

23      responses.  He was properly advised of his

24      rights and waived them and emphatically waived

25      them at one point.
```

12

```
 1              But the second part of the
 2     equation is whether or not the confession or
 3     any inculpatory statements that he made were
 4     the voluntary product of a free and
 5     unconstrained will.  Did these -- do these
 6     statements reflect a deliberate choice on the
 7     part of Mr. Gill or rather were they coerced
 8     by improper police pressure?  And most of the
 9     time and in the days before DVDs and recorded
10     confessions, most of the challenges around
11     voluntariness of statements came in the form
12     of:  I was physically coerced or menaced or
13     threatened.  The officers were armed.  They
14     hurt or they threatened to hurt me.  That was
15     the substance of most of the challenges to the
16     voluntariness aspect.
17              But as we have progressed and as
18     these encounters are memorialized and
19     videotaped, certainly -- and it's a good thing
20     for everybody concerned, those kind of
21     challenges have greatly diminished.  But the
22     kind of challenge that we have here today has
23     come more to the fore, how to gauge an
24     interaction between sophisticated, highly-
25     trained investigators with a metropolitan
```

13

1 police department, how to gauge their

2 interactions with an individual of Mr. Gill's

3 personal circumstance.

4   So the Court finds that improper

5 police pressure and improper methods is not

6 confined to the physical.  It encompasses the

7 whole gamut of interview techniques.  And

8 there are some things that are in bounds and

9 some things that are hard blows and there are

10 some things that are foul blows.

11   So on February 12th, Mr. Gill

12 clearly invoked his Sixth Amendment right to

13 counsel when he says on Page 13 of the

14 transcript that's been prepared for the Court

15 "I don't have a lawyer though.  I want one,"

16 on lines 13 through 14.  And the detectives

17 honor that request.  The interview is

18 stopped.  The defendant is removed from the

19 room and taken presumably to a cell.  And that

20 is the proper procedure.

21   The next day the testimony was

22 that the defendant was brought up to talk to

23 the detective in the morning and that somehow

24 he came up on his own with the idea that he

25 wanted to have a polygraph.  The Court's

14

1    assuming that that's credible.  That's a
2    credible assertion.  But it's important to
3    note what happens next.  And I'm referring to
4    the transcript of the morning proceedings --
5    the morning encounter between the detective
6    and the defendant on February 13th beginning
7    at approximately seven or 7:30 in the morning.
8              Beginning on Page 3, the
9    interrogator acknowledges "I was told you
10   asked for a lawyer last night when you were
11   talking to the detectives."  Mr. Gill
12   acknowledges "Yes."  The interviewer then asks
13   "But you changed your mind and want to take a
14   polygraph?"  Mr. Gill answers "Yes."  And we
15   go on a couple lines later and the detective
16   explains to Mr. Gill that once you ask for a
17   lawyer that nobody can talk to you, the
18   detectives, the cops, nobody can talk to you
19   or anything after that and Mr. Gill indicates
20   that he understands that.  The interview then
21   goes on.  And this is crucial.  At line 18 he
22   says "Okay.  But now you're asking for a
23   polygraph.  We can't do that without a lawyer
24   unless you're saying you don't want a
25   lawyer."  Let's look at that statement.

15

```
1              The detective tells Mr. Gill that

2     he can't have a polygraph without a lawyer

3     unless he waives his right to have a lawyer.

4     It doesn't make much sense.  In reality what

5     the Court infers the detective was trying to

6     say was that:  It will take time to get you a

7     lawyer and you can have a lawyer and have a

8     polygraph but it will take time.  And if you

9     want to do it right now, we don't have time to

10    get a lawyer.  That's what I'm inferring was

11    the intention of those remarks.  However, it

12    didn't come out that way.  And Mr. Gill, by

13    his answers, clearly didn't interpret it that

14    way.  Mr. Gill by his answers -- and I'll go

15    through those -- clearly interprets the

16    detective's remarks as being one-or-the-other-

17    type of situation:  Either you have a

18    polygraph now without a lawyer or you don't.

19    And we'll get you a lawyer later.  Because --

20    and we know that Mr. Gill interprets it that

21    way by the interaction.

22              So he's invoked his right one

23    time.  The detective presents him with a

24    misstatement or at the very least a confusing

25    proposition.  And Mr. Gill says "No.  I want
```

16

1     this" on Page 3, line 22. And then the

2     interviewer basically puts words in Mr. Gill's

3     mouth. Instead of asking: Yes or no? Do you

4     want a lawyer or don't you want a lawyer or do

5     you want to wait to take the polygraph and

6     we'll get you a lawyer or do you want to take

7     the polygraph without a lawyer? He says --

8     the question is "Okay. So you're saying you

9     don't want a lawyer?" Mr. Gill answers "No.

10    I want this."

11          So the Court interprets this

12    exchange this way, that Mr. Gill is hearing:

13    This is my choice: I don't have a lawyer and

14    I take the polygraph or I don't get to take

15    the polygraph and I wait for a lawyer. And

16    that is not the way it has to work in the

17    Court's estimation. You have a right to have

18    a lawyer. And if the police department still

19    offers you a polygraph, you can still take a

20    polygraph if you're represented. The Court's

21    aware there can't be anybody else in the room

22    and there are all sorts of other rules that go

23    along with this. But it is not an all-or-

24    nothing proposition as it's clearly

25    interpreted by Mr. Gill.

17

```
 1                    So the problem here is that

 2       Mr. Gill's statements thereafter in this

 3       Court's finding are not voluntary.  They were

 4       the product of the choice that was put to him,

 5       which given his limitations I find that he did

 6       not appropriately -- the inference is by the

 7       exchange -- that he did not properly

 8       understand his choices and further that the

 9       officers did not scrupulously honor his

10       request for an attorney.  And I will note

11       again, he subsequently invoked his right to

12       counsel in the final interaction on February

13       14th and again was told:  Well, it's one or

14       the other.  And that's a problem because

15       people who are represented by counsel make

16       statements to the police if they decide that

17       that's what they want to do after consulting

18       with their lawyer.

19                    Part of the problem that I also

20       find with this whole interaction between

21       Mr. Gill and law enforcement in this case is

22       apparently the practice that's been employed

23       of having multiple interrogators deal with one

24       suspect.  In this case there were five

25       separate individuals interrogating Mr. Gill
```

```
1    over a period from the evening of February
2    12th through at least noon on February 14th.
3    When there is no one person who is
4    consistently involved with a suspect, it
5    increases the likelihood that
6    miscommunications will occur and this is what
7    we are seeing.
8              Therefore, based upon the legal
9    standards that the Court is bound to employ
10   and after examination of all the facts as I
11   found them to be and Mr. Gill's personal
12   circumstance in this case, I am finding that
13   his statements that were made beginning in the
14   morning of February 13th, 2013, and forward
15   are not admissible and that they were not
16   voluntary and his request for counsel was not
17   scrupulously honored.  Therefore, those
18   statements will be suppressed for use by the
19   state in their case-in-chief.
20             Now, Mr. Apollo, do you need some
21   time to digest the Court's ruling?
22             MR. APOLLO:  I do.  I would
23   request a short status date, Your Honor.
24             THE COURT:  All right.  I'll
25   allow you that.  How long do you need?
```

19

```
 1                    MR. APOLLO:  If I could have a

 2     week.  Would that be okay with the Court?

 3                    THE COURT:  We'll see what we

 4     have.  We'll go off the record.

 5                    (Whereupon, discussion held off

 6     the record.)

 7                    (Whereupon, discussion held back

 8     on the record.)

 9                    THE CLERK:  Next court date

10     Thursday, March 6th, 1:30 for status.

11                    (Whereupon, proceedings ended at

12     10:44 o'clock in the forenoon.)

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1        **COURT REPORTER'S CERTIFICATE**

2

3

4

5    STATE OF WISCONSIN)

6                      )SS

7    MILWAUKEE COUNTY   )

8

9

10

11        I, STEPHANIE SHOATE, Official Court Reporter,

12   do hereby certify that as a Certified Merit

13   Reporter for Milwaukee County, I took in Stenograph

14   the proceedings had before the Court in the

15   aforementioned matter on February 25, 2014, and

16   that the attached transcript is a true and correct

17   copy of said shorthand notes.

18

19        Dated this 27th day of February, 2014, at

20   Milwaukee, Wisconsin.

21

22

23                              *Stephanie Shoate*

24                         Stephanie Shoate
                            Certified Merit Reporter

25